**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joan Bellows, | No. CV-23-02665-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Martin O'Malley, Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial by the Social Security Administration of Plaintiff Joan Bellows' application for Title II disability insurance benefits under the Social Security Act. Plaintiff filed a complaint (Doc. 1) with the Court seeking review of her claim. The Court has reviewed the briefs (Docs. 9, 11, 14) and the administrative record (Docs. 6, 7, 8 "A.R."), and now affirms the Administrative Law Judge's ("ALJ") decision.

**I.    BACKGROUND**

Plaintiff filed an application for disability insurance benefits and supplemental security income on September 17, 2020. (A.R. at 19, 250.) The claim was denied on June 22, 2021 (*id.* at 19, 67-70), and upon reconsideration on March 30, 2022 (*id.* at 19, 125, 148). Thereafter, Plaintiff filed a request for a hearing, which was held before the ALJ on October 21, 2022. (*Id.* at 19, 248.) On January 5, 2023, the ALJ issued a ruling unfavorable to Plaintiff. (*Id.* at 16-36.)

The Court has reviewed the record and will discuss the pertinent evidence in addressing the issues raised by the parties. Upon considering the medical evidence and

medical opinions, the ALJ evaluated Plaintiff's disability claim on the following severe impairments: cervical, lumbar and thoracic degenerative disc disease; major depressive disorder, attention deficit hyperactivity disorder; generalized anxiety disorder, and hypothyroidism. (*Id.* at 22.)

The ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 24.) Next, the ALJ determined Plaintiff's residual functional capacity ("RFC").[1] The ALJ found:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk with normal breaks for 6 hours in an 8-hour day. She can sit with normal breaks for 6 hours in an 8-hour day. She can frequently climb ramps and stairs. She can occasionally climb ladders, ropes, and scaffolds. She can frequently balance, stoop, kneel, and crouch. She can occasionally crawl. She should not be exposed to hazards such as moving machinery and unprotected heights. She is able to perform simple routine work tasks involving simple work-related decisions and simple instructions.

(*Id.* at 26.) Based on this RFC, the ALJ found Plaintiff could not perform any past relevant work. (*Id.* at 34.) Nonetheless, the ALJ found there were a significant number of jobs in the national economy Plaintiff could perform (*Id.* at 35.) Consequently, the ALJ concluded Plaintiff was not disabled under § 1614(a)(3)(A) of the Social Security Act. (*Id.* at 36.)

## II.     LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court only reviews the issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's determination only if it is not supported by substantial evidence or it is based on legal error. *Orn v. Astrue*, 495

---

[1] RFC refers to the most a claimant can still do in a work setting despite his or her limitations. 20 C.F.R. § 416.945(a)(1).

F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the entire record. *Id.* When determining if substantial evidence supports a decision, the Court must consider the entire record and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (citation omitted). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted). The substantial evidence threshold "defers to the presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, 587 U.S. 97, 108 (2019); *see also Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (noting substantial evidence "is an extremely deferential standard").

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i), (b). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520 (a)(4)(ii), (c). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii), (d). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv), (f), (h). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v), (g), (h). If not, the claimant

1 is disabled. *Id.*

## III. DISCUSSION

Plaintiff raises four issues. First, Plaintiff argues the Appeals Council failed to address Plaintiff's objection to the vocational expert ("VE") job numbers in the national economy. (Doc. 9 at 1.) Second, Plaintiff argues the ALJ erred at step five when the ALJ found Plaintiff could perform jobs that exceeded Plaintiff's RFC. (*Id.*) Third, Plaintiff argues the ALJ erred when evaluating the mental health provider opinions. (*Id.*) Plaintiff finally argues the Court should reverse or remand the ALJ's decision for a new hearing. (*Id.*)

### A.  VE Objection

Plaintiff argues the Appeals Council failed to consider new evidence that disputes the VE's numbers. (*Id.* at 5-8.) The Court disagrees because (1) the Appeals Council admitted this evidence into the administrative record and (2) Plaintiff's evidence is not significant or probative.

"Social security disability claimants must raise challenges to the accuracy of a VE's job-number estimates 'at some point during administrative proceedings to preserve the challenge on appeal in federal district court.'" *White v. Kijakazi*, 44 F.4th 828, 835 (9th Cir. 2022) (citing *Shaibi v. Berryhill*, 883 F.3d 1102, 1103 (9th Cir. 2017)). "The Appeals Council is the final level of SSA's administrative review," and "the SSA's decision is not final until the Appeals Council denies a request for review." *Id.*

"[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). Thus, "[w]hen the Appeals Council declines review, 'the ALJ's decision becomes the final decision of the Commissioner'" and "the district court reviews that decision for substantial evidence based on the record as a whole." *Id.* at 1161-62 (citation omitted).

Here, Plaintiff timely challenged the VE's accuracy when she submitted new evidence to the Appeals Council that supported her objection. (A.R. at 383-392.) A plaintiff must raise "challenges to the accuracy of a VE's job estimates" during the administrative proceedings. *White*, 44 F.4th at 835 (citation omitted). And because the Appeals Council is the "final level of SSA's administrative review," Plaintiff raised her challenge during the administrative proceedings—preserving her ability to raise the "challenge on appeal in federal district court." *Id.* (citation omitted). Accordingly, the Court must now consider whether this evidence is significant and probative. *Wischmann v. Kijakazi*, 68 F. 4th 498, 505 (9th Cir. 2023) (citing *Kilapatrick v. Kijakazi*, 35 F.4th 1187, 1193-94 (9th Cir. 2022)). (A.R. at 4, Ex. 16E.)

The Court determines "whether there is support for [a claimant's] counsels' approach in generating job-number estimates in determining whether new evidence is significant and probative." *White*, 44 F.4th at 836 (cleaned up). A VE's estimate on the number of jobs available in the national economy is informed by the VE's experience and expertise. *See Wischmann*, 68 F.4th at 507. A VE's data process may include "not only publicly available sources but also information obtained from employers and data otherwise developed from [the VE's] own experience in job placement or career counseling." *Id.* at 501 (citing *Biestek*, 587 U.S. at 97) (quotations omitted).

Plaintiff's counsel submitted a 9-page letter that provides "no basis to conclude that these results qualified as significant probative evidence." *See id.* at 506 (citing *Kilapatrick*, 35 F.4th at 1194). The letter fails to explain how the job numbers were produced. (A.R. at 383-92.) Indeed, it merely includes the name of the software, Job Browser Pro, used to generate the results. (*Id.*) But "[a] software program . . . is merely a tool that must be used appropriately to produce reliable results." *Wischmann*, 68 F.4th at 507. Job Browser Pro assists a VE in estimating the number of available jobs, but experience "using the program and interpreting the output would ordinarily be necessary to produce probative results." *Id.* Here, there is no indication whether the attorney or a VE with expertise in calculating job figures in the national economy completed this search. The letter also does not establish

whether "the attorney replicated a methodology that was set forth by the VE at the hearing." *See id.* Therefore, Plaintiff's new evidence does not undermine the VE's testimony, nor does it deprive the ALJ's step five findings of substantial evidence.

### B. Claimant's Ability to Perform Other Work

Plaintiff argues the ALJ erred at step five by finding Plaintiff could perform jobs that exceed Plaintiff's RFC. (Doc. 9 at 8-11.) The Court finds the ALJ erred in reconciling the conflict between Plaintiff's limitations and the demands of Level 3 Reasoning required for a mail clerk. Nonetheless, this error is harmless.

At step five, "the Commissioner has the burden to identify specific jobs existing in substantial numbers in the national economy that a claimant can perform despite his identified limitations." *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015) (cleaned up). First, the ALJ assesses "a claimant's [RFC], defined as the most that a claimant can do despite physical and mental limitations caused by his impairments and related symptoms." *Id.* (citing 20 C.F.R. § 416.945(a)(1)) (cleaned up)). Second, "the ALJ considers potential occupations that the claimant may be able to perform." *Id.* (citing 20 C.F.R. § 416.966). The ALJ relies on the Dictionary of Occupational Titles ("DOT"), which "describes the requirements for each listed occupation, including the necessary General Educational Development [] levels." *Id.* These levels include "the reasoning ability required to perform the job." *Id.* at 846. Additionally, the ALJ relies on testimony from VEs "about specific occupations that a claimant can perform in light of his [RFC]." *Id.* (citations omitted).

When there is an inconsistency between the VE's testimony and the DOT, the ALJ must reconcile the inconsistency. *Id.* "The ALJ must ask the expert to explain the conflict and then determine whether the [VE]'s explanation for the conflict is reasonable before relying on the expert's testimony to reach a disability determination." *Id.* (cleaned up). A failure to resolve this inconsistency may leave gaps in the record that preclude the Court from deciding whether the ALJ's is "supported by substantial evidence." *Id.*

Plaintiff does not contest the ALJ's findings that she is limited to "simple routine tasks involving simple work-related decisions and simple instructions at a light residual

function capacity." (Doc. 9 at 10.) Rather, Plaintiff argues there is an inconsistency between her limitations and the requirements of Level 3 Reasoning. (*Id.*)

The ALJ identified three jobs in the national economy that an individual with Plaintiff's age, education, work experience, and RFC could perform: office helper (reasoning level 2), mail clerk (reasoning level 3), and checker I (reasoning level 2). (*Id.*; A.R. at 35-36.) Because there "is an apparent conflict between the [RFC] to perform simple, repetitive tasks, and the demands of Level 3 Reasoning," the ALJ erred by not asking the VE to explain why a person with Plaintiff's limitation could meet the demands of Level 3 reasoning. *Zavalin*, 778 F.3d at 847.

"[T]he court will not reverse an ALJ's decision for harmless error." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). A harmless error exists "when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id.* (cleaned up).

Here, the ALJ identified a significant number of jobs in the national economy that Plaintiff could perform aside from a job as a mail clerk, which has 42,000 jobs in the national economy. (A.R. at 35.) Indeed, the ALJ identified 18,000 jobs as an office helper and 22,000 jobs as a checker I, which total 40,000 jobs in the national economy. (*Id.*) Therefore, the ALJ's error was harmless because she properly concluded that Plaintiff "could still perform other work in the national and local economies that existed in significant numbers." *Tommasetti*, 533 F.3d at 1042 (citations omitted); *see also Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014) (stating that 25,000 jobs in the national economy constitutes a significant number of jobs).

### C. Medical Opinions

Plaintiff argues the ALJ committed reversible legal error when the ALJ failed to base Plaintiff's RFC determination on all the relevant evidence—specifically the opinions of Plaintiff's mental health providers. (Doc. 9 at 11-15.)

Because Plaintiff filed her claim after March 27, 2017, the revised regulations for evaluating medial evidence apply. (A.R. at 19.) *See* Revisions to Rules Regarding the

Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). The revised rules do not require an ALJ to defer to the opinions of a treating physician nor assign every medical opinion a specific evidentiary weight. 20 C.F.R. § 404.1520c(a).

Instead, the revised rules require the ALJ to consider all opinion evidence and determine the persuasiveness of each medical opinion's findings based on factors outlined in the regulations. 20 C.F.R. § 404.1520c(a)-(b). The most important factors ALJs consider are "consistency" and "supportability." *Id.* § 404.1520c(b)(2). Supportability focuses on evidence intrinsic to the medical opinion, requiring adjudicators to look at the relevance of the objective medical evidence and explanations cited as support for the physician's medical opinion. *Id.* § 404.1520c(c)(1). In contrast, consistency focuses on evidence extrinsic to the medical opinion, requiring adjudicators to compare consistency of the opinion to other evidence in the record. *Id.* § 404.1520c(c)(2). The ALJ can, to a lesser degree, consider other factors such as the length and purpose of the treatment relationship, the kinds of examinations performed, and whether the medical source personally examined the claimant. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

The Ninth Circuit held that "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* "[Substantial evidence] is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Orn*, 495 F.3d at 630 (cleaned up). And "substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005)).

Therefore, an ALJ "must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source . . . and explain how it considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (cleaned up).

**1.     Dr. A. Titus**

The ALJ's decision to find Dr. Titus' medical opinions partially persuasive is supported by substantial evidence. The ALJ notes that although Dr. Titus found "claimant

had no limitation in understand, remember, or apply information, mild limitation in interact with others, moderate limitation in concentrate, persist or maintain pace, and mild limitation in adopt and manage oneself," these findings are only partially consistent with record and partially supported by the medical evidence. (A.R. at 31.)

For example, the ALJ noted Dr. Titus' opinion regarding the claimant's mild limitation in interacting with others was inconsistent with the record. (*Id.* at 31, 82.) Yet Dr. Titus previously found Plaintiff had no social interaction limitations. (*Id.* at 118.) Additionally, Dr. Titus found Plaintiff had mild limitations to adopt and manage herself. (*Id.* at 31, 82.) But the claimant herself denied having "significant impact on activities of daily living." (*Id.* at 520.) Indeed, "claimant [was] able to complete self-care activities including meals, hygiene, and light housework. The claimant [was] confined to bed and gets adequate sleep." (*Id.*) Accordingly, the ALJ properly discounted those portions of Dr. Titus' opinion that were inconsistent with the record and the opinions of the other mental health providers. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (stating that inconsistencies with medical evidence is a proper reason to discount an opinion). And the ALJ properly considered the remainder of Dr. Titus' opinion because it was "consistent with the record and supported by the medical evidence record." (*Id.* at 31.)

### 2. Dr. Eblen

The ALJ's decision to find Dr. Eblen's opinion partially persuasive is supported by substantial evidence. The ALJ states that although "Dr. Eblen indicated that the claimant could carry out 1-2 step work . . .[g]iven the claimant's activity levels, there is no need to limit her to 1-2 step tasks." (*Id.* at 32.) For example, on March 4, 2022, Dr. Eblen found Plaintiff should be able to carry out and remember one to two-step instructions in work context. (*Id.* at 135, 146.) But this contradicts Dr. Titus' finding that Plaintiff had "a fair ability to function in a semi-skilled (3-4 step) work environment." (*Id.* at 81-83.) Further, the ALJ explains the record does not show cognitive deficits consistent with a limitation beyond simple work. (*Id.* at 31-32.) In support, the ALJ cites Plaintiff's ability to:

>Travel independently. [Plaintiff] denied impairments with driving. [Plaintiff] showered once or twice a week and brushed her teeth once a day. [Plaintiff] prepared one simple meal a day. [Plaintiff] managed her own money. [Plaintiff] managed her own medical care. . . . [Plaintiff] loaded the dishwasher. Sometimes [Plaintiff] went to the grocery store. . . . [Plaintiff] was able to compete self-care activities including meals, hygiene, and light housework. [Plaintiff] was not confined to bed and got adequate sleep. [Plaintiff] was able to drive a vehicle.

(*Id.* at 32.)

Plaintiff argues these activities are not analogous to work activities. (Doc. 9 at 13.) But this evidence may be interpreted as Plaintiff's ability to engage in more than one to two-step work activities due to her ability to engage in multi-step activities at home. And "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Shaibi*, 883 F.3d at 1108 (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). Accordingly, since the ALJ's interpretation of the evidence was rational, the ALJ's decision to treat Dr. Eblen opinion as partially persuasive is supported by substantial evidence. *Id.*

### 3. Dr. Rubin

The ALJ's decision to find Dr. Rubin's opinions partially persuasive is not supported by substantial evidence. The ALJ failed to explain her partial rejection of Dr. Rubin's medical opinion. Indeed, the ALJ mentions Dr. Rubin only once throughout the entire decision (A.R. at 31.) "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792; *see also Cline v. Comm'r of Sec. Sec. Admin.*, No. CV-23-00236-PHX-DLR, 2024 WL 426782, at *3 (D. Ariz. Sept. 23, 2024) (finding the ALJ erred because he "did not properly articulate his reasoning when partially rejecting [the doctor's] opinion").

The Court now considers whether the error was harmless. *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (noting that a harmless error analysis applies even when "an

ALJ ignores a treating source's medical opinion"). As noted, an error is harmless if it is "inconsequential to the ultimate nondisability determination" and if the Court "can confidently conclude that no reasonable ALJ, when [not making the same error], could have reached a different disability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006).

The parties contest whether "the ALJ failed to give legal reasons to reject a limitation to one and two step instructions" based on Dr. Rubin's and Dr. Eblen's findings. (Docs. 9 at 11-14; 11 at 14-17.) Although the ALJ did not explain why she discredited Dr. Rubin's one to two-step limitation, the ALJ gave substantial evidence outlining why she rejected Dr. Eblen's same conclusion. Specifically, the ALJ found that Dr. Titus's opinion contradicts a one to two-step finding and Plaintiff's own testimony shows she can engage in multi-step activities at home. (A.R. at 31.) Based on the ALJ's decision, it is clear the ALJ considered the entire record when deciding to find Dr. Rubin's opinion partially persuasive, as the record establishes that both doctor's conclusions were unsupported. The ALJ rationally interpreted these activities to demonstrate why Plaintiff should not be restricted to this type of limitation. *See Shaibi*, 883 F.3d at 1108 (stating that the ALJ's decision should be upheld where evidence is susceptible to multiple interpretations). Therefore, the ALJ committed harmless error when she failed to give substantial evidence to support her decision to find Dr. Ruben's opinion partially persuasive.

### 4.  Dr. Sukey-Haley

Plaintiff argues the ALJ erred because Dr. Sukey-Haley's opinions were supported by the record and the ALJ failed to give adequate reasons for discounting them. (Doc. 9 at 14-15.) The Court disagrees.

The ALJ identified inconsistencies in Dr. Sukey-Haley's opinion that rendered it unpersuasive. Among other reasons, the ALJ stated that Dr. Sukey-Haley's opinion was inconsistent with Plaintiff's treating mental health providers. (A.R. at 33.) For example, in Dr. Sukey-Haley's observations of Plaintiff, the doctor provided "there was no indication

of hyperactivity." (*Id.* at 489.) The ALJ found this inconsistent with Plaintiff's treating mental health providers as Plaintiff has been diagnosed and treated for ADHD. (*Id.* at 33.)

Additionally, the ALJ highlighted Dr. Sukey-Haley's finding that Plaintiff would likely struggle with persistence and "maintaining a regular and consistent schedule is not something that would be easy for her to do at this time." (*Id.* at 33, 490.) Plaintiff previously stated that "she used to make around $100,000 a year and now only made $12.00 per hour and did not feel motivated to keep a job like that." (*Id.* at 29; 751.) Despite Dr. Sukey-Haley's finding that Plaintiff would likely struggle to maintain a regular work schedule, Plaintiff's own admissions demonstrate her lack of current employment may be due to dissatisfaction and not an inability to work. *See Tommasetti*, 533 at 1040 (considering the plaintiff's financial motivation); *Sorenson v. Weinberger*, 514 F.2d 1112, 1117 (9th Cir. 1975) ("That a job is found to be tedious or uncomfortable cannot constitute substantial evidence that a person is disabled from doing any work. If this were the law, the Social Security Act would become an unemployment compensation act.").

The ALJ also notes that Dr. Sukey-Haley stated Plaintiff would have difficulty "[c]oping with stress" and "would likely be sensitive to criticism from a supervisor." (A.R. at 33, 491.) But the record demonstrates Plaintiff's activities conflict with Dr. Sukey-Haley's findings. For instance, Plaintiff went on a road trip to Flagstaff, camped and went off-roading, visited Tennessee, lives with her boyfriend, and spends time with her family. *See, e.g.*, *Fry v. Berryhill*, 749 Fed. Appx. 659, 661 (9th Cir. 2019) (stating that the social aspects of travel are inconsistent with a doctor's opinion that the claimant's "ability to get along with others [was] limited"). (A.R. at 53, 748, 823, 829, 1130.)

The ALJ properly gave Dr. Sukey-Haley's Medical Source Statements the benefit of the doubt and evaluated all Plaintiff's statements as required under C.F.R. § 404.1520. Further, the ALJ's examples demonstrate a lack of consistency and supportability in Dr. Sukey-Haley's medical opinion, and therefore the ALJ's evaluation is supported by substantial evidence.

      **D.**     **Credit-As-True Rule**

Plaintiff also asks this Court to apply the "credit-as-true" rule, which would result in a remand of Plaintiff's case for payment of benefits rather than for further proceedings. (Doc. 9 at 16.) Because the Court will affirm the ALJ's decision, an evaluation of the parties' arguments as to remand is not necessary.

**IV.**     **CONCLUSION**

Accordingly,

**IT IS ORDERED affirming** the January 5, 2023 decision by the Administrative Law Judge (A.R. at 16-36).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 17th day of October, 2024.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge